**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

MICHAEL PLATTS,

                Plaintiff,

vs.

KELLY SERVICES, INC., and KRAFT
FOODS GROUP, INC.,

                Defendants.

No. C 14-3026-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
DEFENDANTS' MOTION TO
STRIKE PLAINTIFF'S ENTRY ON
ERRATA SHEET FOR HIS
DEPOSITION**

————————————

**TABLE OF CONTENTS**

I.    **INTRODUCTION**......................................................................2
    A.    *Factual Background* ...........................................................2
    B.    *Procedural Background* ......................................................7

II.   *LEGAL ANALYSIS* ...................................................................8
    A.    *The Defendants' Motion To Strike* .......................................9
        1.    *Additional background* ..............................................9
        2.    *Arguments of the parties*............................................9
        3.    *Analysis* ..................................................................9
    B.    *The Defendants' Motion For Summary Judgment* .....................13
        1.    *Standards for summary judgment*................................13
        2.    *Platts's Public Policy Claim*......................................14
            a.    *Arguments of the parties* .....................................14
            b.    *Analysis* .........................................................15
        3.    *Liability Of Kraft Foods Group*..................................17
            a.    *Arguments of the parties* .....................................17
            b.    *Analysis* .........................................................18

       4.      *Platt's ICRA Disability Discrimination Claim* ...................... 20
           a.     *Arguments of the parties* ...................................... 21
           b.     *Analysis* ........................................................ 23
**III.**   **CONCLUSION** ............................................................. 25

# I.     INTRODUCTION

## A.     *Factual Background*

Despite the parties' lengthy statements of facts, I find that the facts sufficient to put in context plaintiff Michael Platts's claims and the parties' arguments concerning summary judgment can be set forth rather briefly. Specific factual disputes that are or may be dispositive will be addressed in my legal analysis, below.

The parties agree that, in 1989, well before Platts's employment with defendant Kelly Services, Inc., Platts suffered a back injury. That injury required two surgeries, involving a fusion with internal fixation and implantation of a TENS unit to assist with back pain. Platts has been receiving Social Security disability benefits since 2009, because of his back problems. In 2009, Platts was diagnosed and treated for colon cancer, but that cancer is now in remission. Platts began having heart problems in 2011 and was diagnosed with a cardiomyopathy, for which he has a pacemaker. For purposes of summary judgment, defendants Kelly Services, Inc., (Kelly) and Kraft Foods Group, Inc., (Kraft) do not dispute that, at all relevant times, Platts was "disabled" within the meaning of the Iowa Civil Rights Act (ICRA), Iowa Code Ch. 216.

Platts completed an application for employment with Kelly on January 26, 2012, and was hired shortly thereafter. The Employment Agreement at the end of the Kelly

Services Employment Application, signed by Platts, includes, *inter alia*, the following provisions:

## General Information

\* \* \*

> My employment term with Kelly is not guaranteed and is considered to be "at will." Kelly or I may end the relationship at any time with or without cause subject to applicable laws.

\* \* \*

## Employment Relationship

> I understand I am not an employee of any customer to which Kelly assigns me, regardless of any customer statement, conduct, or belief. I will not be eligible to participate in or to receive benefits from any customer's benefits plans or policies. I waive and reject all rights to receive, apply for, or participate in any customer's benefits plans or policies.

\* \* \*

## Notice of Assignment End

> Upon completion of each assignment, I will notify Kelly of my availability for work. I understand I am responsible for maintaining weekly contact with Kelly and failure to do so will indicate I have either voluntarily quit or am not actively seeking work. Failure to contact Kelly may affect my eligibility for unemployment benefits.

Defendants' Appendix (docket no. 26-4), 31 (Employment Application and Employment Agreement); *see also* Defendants' Appendix at 16 (Platts's Deposition, 76:11-25 78:7-15).

Platts was assigned to work at Kraft, a customer of Kelly, as a part-time temporary employee working 18 hours (three 6-hour shifts) per week, which was under the hours permitted while he received Social Security disability benefits. The parties do not dispute that positions at Kraft in which Kelly placed workers were the best paid positions

available.  Platts acknowledged in his deposition that he understood that he was a Kelly employee and that he was never a Kraft employee.  *Id*. at 16 (Platts's Deposition at 77:3-9).  Nevertheless, he now contends that whether or not he was an employee of Kraft is a legal conclusion and that he was employed by both Kelly and Kraft.

Platts missed time from work in January and June 2013.  On both occasions, the return-to-work documentation from his doctors that he provided did not indicate any restrictions.  Although Platts did not have any specific work restrictions, Platts admits that Kelly accommodated his schedule for physical therapy, permitted him to be absent from work owing to issues with either his back or his heart, and allowed him to avoid working next to the baler machine because its magnets could impact the functioning of his pacemaker.

Platts alleges that, at an employee meeting, in the spring of 2013, a Kelly supervisor, Heather Wubben, announced that employees would have to be able to do all of the jobs in the Kraft plant or be terminated and that Kraft had so informed the Kelly representatives at the facility.  The defendants assert, based on the testimony of Brad Jones, the Kelly operations manager at the Kraft facility, that what was actually required was that employees be trained on all of the lines at the Kraft facility, so that the lines that were operational on any given day could be staffed with trained workers.  Platts also alleges that Wubben said that Kelly would no longer employ people in "light duty" positions and would no longer make "allowances" for Platts.  Again, the defendants point to testimony of Jones that employees who were not trained on all lines at the Kraft facility would be placed on the "Lunchables lines," the least strenuous positions at the Kraft facility.  Platts alleges that, when he spoke up at the meeting to explain that he had a bad back and could not work around magnets, Wubben told him, "[T]hen you won't be here long."  He also alleges that, when he told Wubben he was "disabled," she said that would not make any difference.  The defendants point out that, even if the statements attributed

to Wubben were made, those statements were not true, and they are undermined by the fact that Platts was given "allowances" through August of 2013. There is no evidence that Wubben was actually involved in any decisions regarding Platts's employment.

Platts was forced to stop working at Kraft in August of 2013, owing to a flare-up of his heart condition. When Platts was ready to return to work in October of 2013, he provided two notes from his doctors. One note, from his heart doctor, indicated that Platts could return to work on October 22, 2013, but should avoid extreme heat, if possible, and if working with machines with magnets, "keep track in case device check shows noise, so we know what it could be from." *Id.* at 24 (Mason City Clinic, P.C., Certificate Of Return To Work Or School). Platts testified that his heart doctor knew that he only worked a total of 18 hours per week and that his heart doctor would not have released him to work more than 20 hours per week, but the heart doctor did not include any hours restrictions in his note. *Id.* at 12 (Platts's Deposition at 55:20-56:23). The other note, from Platts's family doctor, stated that Platts's work activity was restricted to "light duty." Defendants' Appendix at 26 (MC MFC Regency, Note from Dr. Garcia). Platts testified that this restriction was because of his back problems, not because of his heart, *see id.* at 6, 13 (Platts's Deposition at 27:25-28:4, 57:5-58:23), but the doctor's note does not indicate the reason for the restriction or the nature or extent of any specific "light duty" limitations. That doctor's note also does not include any restrictions on standing, walking, lifting, or bending. Nevertheless, Platts contends that he did have a bending restriction, in that he was supposed to bend with his back straight, not lift more than his knees and back could handle, and not engage in repetitive bending. Platts testified that the "light duty" restriction did not preclude him from doing anything that he had done before, "[b]ecause when I was hired they told me it was all light duty, which it was." *Id.* at 20 (Platts's Deposition at 95:13-16).

It was at this point, however, that something went amiss in the relationship between Platts and Kelly. In October 2013, Marcie Porterfield, who was the "recruiter" with Kelly responsible for interviewing and hiring applicants and managing and counseling temporary employees, met with Platts and reviewed his return-to-work documents. Platts asserts that Porterfield saw the "light duty" restriction and told him that there were no "light duty" positions at the Kraft facility. He points out that, in contrast, Porterfield later testified that "Kraft is very light duty, I mean light duty, light industrial," Plaintiff's Appendix (docket no. 27-3), 38 (Porterfield's Deposition, 57:22-23), and that the "light industrial" jobs at Kraft in which Kelly had placed its employees were "as light as you can get." *Id*. at 39 (Porterfield's Deposition at 66:17-20). When Porterfield was asked why she had not asked Platts or his doctor for more information about Platts's "light duty" limitations, Porterfield responded,

> Because he was doing that position prior and then the doctor put him on light duty. He was performing every position just fine. I mean we didn't have any issues. With his disability he was performing it without an accommodation. When he came back he had restrictions, so I—I felt that he could not perform that position because the doctor put him on light duty. And so I didn't go through each position like that. [Platts] [ha]s worked all those positions. He knows what they are.

Defendants' Appendix at 44 (Porterfield's Deposition at 28:4-15).

Porterfield did offer Platts a position on one of the "Lunchables lines," which the parties agree were the least strenuous line jobs on the 7 to 10 lines in operation at Kraft at the time. The "Lunchables lines" were the lines to which Kelly assigned workers, including disabled workers, who could not rotate through all the positions on the other lines. Platts turned down that position, however, because he understood that it required standing in one position for the entire 6-hour shift, which he told Porterfield that he could not do or that he would have difficulty doing. The parties now agree, however, that, as

a safety measure, the "Lunchables lines," like the other lines at the Kraft facility, required "rotation" among positions, some of which required more movement than others, every two hours, with two 10-minute breaks per shift.  Thus, the "Lunchables lines" did not require standing in one place for 6 hours.  Instead of taking a position on a "Lunchables line," Platts asked to be put on the "Hamba line," where he had worked before with only the restriction from working near the baler machine.  Platts told Porterfield that he could still rotate through all of the other positions on that line in the course of a shift.  Platts contends that Porterfield told him that if he could not work a "Lunchables line," then he was "done," because there was no job that he could perform at Kraft.

Platts admits that, after he was advised that he could no longer work at the Kraft facility in October 2013, he knew that he could still apply for other jobs with Kelly and that Porterfield never told him that he was terminated from Kelly.  He also admits that, since that time, he has never contacted the Kelly office looking for other employment. He has, however, applied for employment elsewhere.

## B.    Procedural Background

Platts filed a Petition At Law in the Iowa District Court for Cerro Gordo County on April 8, 2014, initiating this lawsuit against Kelly and Kraft.[1]  In his Petition, Platts alleges that the defendants discriminated against him because of his disabilities in violation of IOWA CODE § 216.6, culminating in the termination of his employment. Petition At Law (refiled in federal court as docket no. 3), ¶ 19.  He also alleges that the defendants terminated his employment because they regarded him as too disabled to work in violation of IOWA CODE § 216.6, and in violation of the public policy of the State of

---

[1] Platts does not allege in his Petition that he exhausted state administrative remedies under the Iowa Civil Rights Act (ICRA), but neither do the defendants seek summary judgment on the ground that Platts failed to do so.

Iowa, which prohibits such unfounded stereotypes of disabled citizens. *Id*. at ¶ 20. Kraft removed this action to this federal court, with the consent and joinder of Kelly, on the basis of diversity of citizenship. *See* Notice Of Removal To Federal Court (docket no. 2). The defendants then filed separate Answers, Kelly's on May 14, 2014 (docket no. 6), and Kraft's on May 27, 2014 (docket no. 12). A jury trial in this matter is currently set to begin on September 28, 2015. *See* Order Setting Trial (docket no. 21).

The defendants filed their Motion For Summary Judgment (docket no. 26), now before me, on April 6, 2015. Platts filed his Brief In Opposition To Summary Judgment (docket no. 27), with supporting materials, on April 30, 2015. The defendants filed their Reply (docket no. 29) on May 11, 2015. On May 6, 2015, the defendants filed their Motion To Strike Plaintiff's Entry On Errata Sheet Dated March 25, 2015 (docket no. 28), which is also now before me, challenging a "correction" by Platts to his February 16, 2015, deposition testimony. Platts filed a Response To Motion To Strike (docket no. 30) on May 14, 2015.

None of the parties requested oral arguments on either of the pending motions in the manner required by applicable local rules. My crowded schedule does not allow for the timely scheduling of any such oral arguments, and I find that the parties' written submissions are sufficient to resolve the motions. Therefore, I will rule on the pending motions on the basis of the parties' written submissions.

## II.    LEGAL ANALYSIS

Because the defendants' Motion To Strike potentially affects the record that I may consider in ruling on their Motion For Summary Judgment, I will resolve that motion first. I will then turn to consideration of the defendants' Motion For Summary Judgment.

### A.      The Defendants' Motion To Strike

### 1.      Additional background

In their Motion To Strike, the defendants challenge Platts's corrections to his deposition at 130:23-24, 131:4; and 132:22. Platts provided the following statement with these corrections:

> On these pages of the deposition I indicated that I would not work for Kraft. After thinking about it, I would consider going back to work at Kraft if this lawsuit is resolved and I am paid what is owed to me. (Exhibit A).

Defendants' Motion To Strike, Exhibit A (docket no. 28-2).

### 2.      Arguments of the parties

The defendants contend that Platts's "correction" is based on "second thoughts" that changed the substance of his deposition testimony, not on a valid reason for correcting his deposition testimony within the scope of Rule 30(e) of the Federal Rules of Civil Procedure. The defendants argue that this "correction" should be likened to a "sham" affidavit contradicting prior deposition testimony for the purpose of attempting to avoid summary judgment. Platts responds that Rule 30(e), on its face, allows him to "change" his testimony and even to change the "substance" of his testimony. He also contends that his "change" is more in the nature of a "clarification." In reply, the defendants argue that Platts is not attempting to make a change based on any error in transcription, but a complete substantive change based on further reflection. They argue that such a change is not permissible.

### 3.      Analysis

Rule 30(e) of the Federal Rules of Civil Procedure provides, in pertinent part, for "changes" to depositions, as follows:

**(e) Review by the Witness; Changes.**

> **(1) Review; Statement of Changes.** On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:
>
> > **(A)** to review the transcript or recording; and
> >
> > **(B)** *if there are changes in form or substance*, to sign a statement listing the changes and the reasons for making them.

FED. R. CIV. P. 30(e)(1) (emphasis added). Thus, Platts is correct that the rule expressly allows for changes in "substance," as well as "form." As district courts in this circuit have recognized, however, "some courts have held against allowing substantive changes in an errata sheet, while other courts have allowed them." *Holverson v. Thyssenkrupp Elevator Corp.*, Civil No. 12–2765 ADM/FLN, 2014 WL 3573630, *11 (D. Minn. July 18, 2014) (citing *Sanny v. Trek Bicycle Corp.*, No. 11–2936, 2013 WL 1912467, *12–*14 (D. Minn. May 8, 2013)); *accord Brown v. West Corp.*, No. 8:11CV284, 2014 WL 1794870, *3 (May 6, 2014) ("The Courts have inconsistently interpreted the meaning of Rule 30(e)'s allowance for a deposed witness to make "changes in form or substance" to their deposition testimony."). The issue seems to be whether courts can "prevent deponents from artfully revising their answers." *Id.* (citing *Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992)).

The court in *Holverson* adopted what it described as the "flexible approach" set forth by the Third Circuit Court of Appeals in *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 267–68 (3d Cir. 2010), because it "provides an appropriate balance between fairness and efficiency":

> In *EBC*, the Third Circuit compared errata sheets to "sham" affidavits, and rejected a "one-size-fits-all" rule. [618 F.3d]

at 270. The court may accept errata if the deponent provides persuasive reasons for why the proposed changes "truly reflect the deponent's original testimony," or if other circumstances satisfy the court. *Id*. As compensating measures, the court may make the original deposition available at trial for impeachment purposes, or re-open the deposition to allow the attorney to inquire about the changes. *See id*. at 267–68. In some instances, however, such options may offer "cold comfort" to the opposing party. Thus, the court ultimately has the discretion to refuse to consider errata altogether if the deponent fails to provide sufficient justification. *Id*.

*Holverson*, 2014 WL 3573630 at *12; *and compare Brown*, 2014 WL 1794870 at *3 ("This Court is persuaded by the reasoning of the District Court of Minnesota: Since the language of the Rule does not provide for judicial checks on the changes deponents wish to make, and since, as a practical matter, the original answer will remain a part of the deposition which can be presented at trial, the Court should not exclude the changes submitted by the deponents."). I believe that the approach of the court in *Holverson* is appropriate, but I also believe that it is instructive to heighten the focus on the analogous circumstances in which revisions to prior deposition testimony in an affidavit in resistance to summary judgment may appropriately be disregarded.

Specifically, in the context of an affidavit in response to summary judgment, I have observed that a party raises only a "sham issue of fact instead of a genuine one," where the affidavit *contradicts* earlier deposition testimony. *Security Nat'l Bank of Sioux City, Iowa v. Abbott Labs.*, 947 F. Supp. 2d 979, 986 (N.D. Iowa 2013) (citing *Camfield Tires, Inc. v. Micheline Tire Corp.*, 719 F.2d 1361, 1365 (8th Cir. 1983), and *Lykken v. Brady*, 622 F.3d 925, 933 (8th Cir. 2010)). I have also observed that exceptions to the "sham issue of fact" rule include "clarification of the prior testimony or explanation of the deponent's confusion"; "supplementation that does not contradict factual assertions

in a prior deposition"; and "recent refreshment of the affiant's memory by photographs that he had not been shown during the deposition." *Id.* Ultimately, I explained, "the question is whether any exceptions appear to be applicable here, or whether the affidavit is, instead, an 'unexpected revision' to create a fact issue where none existed before, with no attempt to explain the difference." *Id.* I noted, "The Eighth Circuit Court of Appeals has also cautioned 'that district courts should examine alleged inconsistencies between an affidavit and previous deposition testimony "with extreme care."'" *Id.* (quoting *Baker v. Silver Oak Senior Living Mgmt. Co., L.C.*, 581 F.3d 684, 690 (8th Cir. 2009), in turn quoting *Camfield Tires, Inc.*, 719 F.2d at 1366). I believe that it is appropriate to consider whether similar circumstances, viewed with similar "extreme care," warrant consideration of an apparently contradictory "change" to deposition testimony.

Here, I find that Platts's change of his answer to questions about whether or not he would consider working for Kraft again—essentially from "no" to "maybe"—is a "substantive" change expressly permitted by Rule 30(e)(1), but that it is also a "contradiction" of his prior testimony. *See Security Nat'l Bank*, 947 F. Supp. 2d at 986. Platts is not wrong that, while "contradictory," his revised statement is a "clarification" of circumstances under which he would consider working for Kraft again. *Id.* Perhaps more importantly, that "clarification" is of an *opinion* or *intention*, rather than a clarification of *factual* testimony, for which Platts has provided a reasonable explanation, specifically, his further consideration of the matter. *Id.* Thus, I do not believe that it is appropriate to strike the change and explanation. Nevertheless, I do believe that fairness dictates that the defendants may present both Platts's original answers and his modified answers, for whatever impeachment value doing so may have. *Holverson*, 2014 WL 3573630 at *12; *Brown*, 2014 WL 1794870 at *3.

Therefore, the defendants' Motion To Strike is denied.

### B. *The Defendants' Motion For Summary Judgment*

Having resolved the issue of whether or not I can consider Platts's "changed" deposition testimony on summary judgment, I turn to consideration of the defendants' Motion For Summary Judgment. I begin with a brief summary of the applicable standards.

### 1. *Standards for summary judgment*

Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, "[t]he movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex*, 477 U.S. at 323). In response, "[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

When the parties have met their burden, the district judge's task is as follows:

> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v.*

> *DeStefano*, ––– U.S. ––––, 129 S. Ct. 2658, 2677, 174 L.
> Ed. 2d 490 (2009) quoting *Scott v. Harris*, 550 U.S. 372,
> 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal
> quotations omitted). "Credibility determinations, the weigh-
> ing of the evidence, and the drawing of legitimate inferences
> from the facts are jury functions, not those of a judge."
> *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,
> 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), quoting
> *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.
> Ct. 2505, 91 L. Ed. 2d 202 (1986). . . . . "'Where the record
> taken as a whole could not lead a rational trier of fact to find
> for the nonmoving party, there is no genuine issue for trial.'"
> *Ricci*, 129 S. Ct. at 2677, quoting *Matsushita*, 475 U.S. at
> 587, 106 S. Ct. 1348.

*Torgerson*, 643 F.3d at 1042-43. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 776 (8th Cir. 2012). On the other hand, summary judgment is particularly appropriate when only questions of law are involved, rather than factual issues that may or may not be subject to genuine dispute. *See, e.g., Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617, 620 (8th Cir. 2006).

### 2. *Platts's Public Policy Claim*

It appears from my reading of Platts's Petition that Platts is attempting to assert both a "disability discrimination" claim under the ICRA and a common-law "public policy" claim of wrongful termination, and the parties' arguments show that they have understood this to be the case. I find it appropriate to consider the "public policy" claim first.

#### a. *Arguments of the parties*

The defendants note that Platts's "public policy" claim "mirrors" his statutory "disability discrimination" claim, where applicable regulations explain that "disability"

within the meaning of the ICRA includes "regarded as having" a disability. They argue that Porterfield's understanding of Platts's disability was not based on prejudice or stereotypes, however, but on Platts's own indication that he could not fulfill the obligations of a "Lunchables line," owing to the standing requirement. Platts argues that the same evidence that establishes "disability discrimination" establishes a violation of "public policy." None of the parties expressly address, however, whether or not *both* claims can be submitted to the jury.

> ### *b.    Analysis*

In my view, both parties have "missed the boat." The Iowa Supreme Court recognized just over two decades ago that "[o]ur civil rights statute [IOWA CODE § 216.6] . . . preempts an employee's claim that the discharge was in violation of public policy when the claim is premised on discriminatory acts." *Borschel v. City of Perry*, 512 N.W.2d 565, 567-68 (Iowa 1994). Consequently, I have recognized,

> A common-law claim is preempted by the Iowa Civil Rights Act (ICRA), Iowa Code Ch. 216, unless the claim is separate and independent of an ICRA claim. *See, e.g., Richards v. Farner–Bocken Co.*, 145 F. Supp. 2d 978, 990–91 (N.D. Iowa 2001). Claims are not separate and independent when, under the facts of the case, success on the claim not brought under Chapter 216 requires proof of conduct prohibited by Chapter 216. *Id.*

*Truckenmiller v. Burgess Health Ctr.*, 814 F. Supp. 2d 894, 912 (N.D. Iowa 2011). In other words, "where [a plaintiff] alleges that the public policy at issue in h[is] common-law wrongful discharge claim is the policy against [discrimination] articulated in IOWA CODE § 216.6, it is plain that the wrongful discharge claim depends upon, and is not separate and independent from, proof of conduct prohibited by Chapter 216, and the wrongful discharge claim is preempted." *Id.*

While the defendants "missed the boat" by failing to base their challenge to Platts's "public policy" claim expressly on "preemption" of that claim by the ICRA, the defendants do recognize that Platts's "public policy" claim "mirrors" his "disability discrimination" claim under the ICRA. Platts also expressly argues that the same facts that establish "disability discrimination," here, establish his "public policy" claim. Where the factual basis for the two claims is undisputedly the same, as a matter of law, Platts's "public policy" claim is "preempted" by his ICRA "disability discrimination" claim. Specifically, Platts "alleges that the public policy at issue in h[is] common-law wrongful discharge claim is the policy against [discrimination] articulated in IOWA CODE § 216.6," and "it is plain that the wrongful discharge claim depends upon, and is not separate and independent from, proof of conduct prohibited by Chapter 216." *See Truckenmiller*, 814 F. Supp. 2d at 912; *Borschel*, 512 N.W.2d at 567-68; *see also Cremona*, 433 F.3d at 620 (explaining that summary judgment is particularly appropriate when only questions of law are involved, rather than factual issues that may or may not be subject to genuine dispute).[2]

---

[2] I do not believe that it is necessary to give notice to the parties and provide them with an opportunity to be heard on the specific question of whether summary judgment is appropriate on Platts's "public policy" claim on the basis of "preemption" by the ICRA, before I enter summary judgment on that ground *sua sponte*. The parties were aware that summary judgment on the "public policy" claim was before the court and both have had the opportunity to address the determinative factual issue, which is the extent to which the "public policy" claim is separate and independent from the ICRA claim. *See Severside Group, Ltd. v. Tactical 8 Techs., L.L.C.*, 985 F. Supp. 2d 900, 928 (N.D. Iowa 2013) (recognizing that summary judgment may be entered *sua sponte* when the parties have been fully heard on determinative factual issues, and the court grants summary judgment on the basis of a question of law). Again, both parties expressly asserted that the claims are "mirrors," are based on the same facts, and that the "public policy" at issue is actually the ICRA prohibition on disability discrimination. Thus, the

The defendants' Motion For Summary Judgment is granted as to Platts's "public policy" claim.

### 3. Liability Of Kraft Foods Group

#### a. Arguments of the parties

The defendants contend that, as an initial matter, Kraft should be dismissed, based on a complete lack of evidence that Kraft is implicated in Platts's "disability discrimination" claim. They argue that Kraft was not Platts's employer, that there is simply no evidence that any employee from Kraft was involved in any decision relating to Platts's work at the Kraft facility, and that the Kelly representative at the Kraft facility testified, unequivocally, that Kraft had no input or involvement with the issue of accommodating Kelly temporary employees working at the facility.

Platts argues that the defendants' contention that, even if he could not work at Kraft, he could have been placed in another position elsewhere by Kelly, is the sort of "double-speak" that explains why Kraft should be held liable in this case. He argues that, if this argument is accepted, discrimination can occur at the Kraft plant, but Kraft and Kelly can simply place the victim elsewhere if he complains, effectively allowing a temporary employment agency to shield its clients from discrimination claims. He also argues that Kraft was involved in the discrimination, because a Kelly supervisor, Heather Wubben, announced in the spring of 2013 that the requirement that all employees had to perform all jobs in the plant or be fired came from Kraft. Thus, Platts argues, Kraft clearly had input into how jobs were performed.

In reply, the defendants argue that Brad Jones, the Kelly operations manager at the Kraft facility, was responsible for the staffing and operation of the lines without input

---

parties have been fully heard on whether there is any *factual* dispute about the bases for the two claims, there is none, and preemption of the "public policy" claim follows as a matter of law.

from Kraft, and that there is no testimony or evidence that Kraft was involved in determining which temporary employees would work the positions on the lines that were operational. The defendants also argue that Platts's circumstances were unknown to Kraft and that Platts has not pointed to any evidence that Kraft had input in any decision regarding Platts.

### b.    Analysis

Although Platts asserts that Kelly and Kraft were both his employer, he has made no attempt to apply the typical four-factor test to determine whether ostensibly separate entities are a "single" or "integrated" employer under antidiscrimination statutes, which examines the interrelationship between or among the entities. *See Sandoval v. American Bldg. Maint. Indus. Inc.*, 578 F.3d 787, 793 (8th Cir. 2009) (considering the following factors: "1) interrelation of operations, 2) common management, 3) centralized control of labor relations, and 4) common ownership or financial control." (citing *Baker v. Stuart Broad. Co.*, 560 F.2d 389, 391 (8th Cir. 1977))); *accord Davis v. Ricketts*, 765 F.3d 823, 827 (8th Cir. 2014) (describing this four-factor test as the "integrated enterprise" or "single employer" test); *see also Witney v. Franklin Gen. Hosp.*, No. C 13–3048–MWB, 2015 WL 1809586, *7 (N.D. Iowa April 21, 2015) ("All of these factors go to the extent of the *interrelationship between or among the entities* to determine the extent to which they should be treated as a *single entity*." (emphasis in the original) (citing *Davis*, 765 F.3d at 827, as explaining that the four-factor test determines whether "'the operations of two or more employers are considered so intertwined that they can be considered the single employer of the charging party'" (quoting EEOC Compliance Manual § 2–III(B)(1)(a)(iii))). Thus, Platts has failed to generate any genuine issue of material fact that Kelly and Kraft are a "single" or an "integrated" employer. *See Torgerson*, 643 F.3d at 1042 (explaining that the party resisting summary judgment must

"come forward with 'specific facts showing that there is a genuine issue for trial.'" (quoting *Matsushita*, 475 U.S. at 586–87)).

The defendants have also pointed to evidence that Platts was not, and understood that he was not, an employee of Kraft, but an employee of Kelly.[3]  That evidence consists of the Kelly Employment Application and Employment Agreement that Platts signed, which specifically states that Platts is an employee of Kelly, and not of any "customer" of Kelly, such as Kraft.  Defendants' Appendix (docket no. 26-4), 31 (Employment Application and Employment Agreement); Defendants' Appendix at 16 (Platts's Deposition, 76:11-25 78:7-15).  It also consists of Platts's deposition testimony confirming his understanding that he was an employee of Kelly, not of Kraft.  *See id*. at 16 (Platts's Deposition at 77:3-9).  Platts has not pointed to any evidence establishing or suggesting that he had an employment relationship with Kraft, such as evidence that Kraft could hire or fire him or even that Kraft paid him, where the evidence shows that he was hired and supervised, even while working at Kraft, by Kelly employees.  *See, e.g., Emster v. Luxco, Inc.*, 596 F.3d 1000, 1003 (8th Cir. 2010) (explaining that the common-law test of an employment relationship applies to the ICRA); *see also Torgerson*, 643 F.3d at 1042 (explaining that the party resisting summary judgment must "come forward with 'specific facts showing that there is a genuine issue for trial.'"  (quoting *Matsushita*, 475 U.S. at 586–87)).

Thus, Kraft is entitled to summary judgment that it was not Platts's "employer."

Liability under the ICRA is not limited to "employers" of "employees," however. Rather, the ICRA imposes liability on any "person," not just an "employer," who engages in or aids and abets prohibited discriminatory or retaliatory conduct.  *See* IOWA

---

[3]  The ICRA definition of "employee"—as "any person employed by an employer"—and the ICRA definition of "employer"—as "every . . . person employing employees within the state"—are circular and unilluminating.

CODE §§ 216.6(1)(a) and 216.11; *Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1147 (8th Cir. 2008) (citing *Vivian v. Madison*, 601 N.W.2d 872, 873 (Iowa 1999), and IOWA CODE § 216.11(2)); *see also Madison v. IBP, Inc.*, 330 F.3d 1051, 1057–58 (8th Cir. 2003) ("While Iowa looks to federal law for guidance when interpreting its own civil rights statutes, the Iowa Supreme Court has also declared that '[f]ederal law … is not controlling.' *Vivian v. Madison*, 601 N.W.2d 872, 873 (Iowa 1999) (individual supervisory employee may be liable for discriminatory employment actions under ICRA even though Title VII does not authorize such claim)."). I have previously held that "persons" under the ICRA are not limited to "supervisory employees," nor are they limited to "natural persons," but may include another business entity that is not the plaintiff's direct employer. *See Whitney*, 2015 WL 1809586 at *9.

Even so, Platts has not pointed to any evidence—as opposed to innuendo—that Kraft engaged in or aided, abetted, compelled, or coerced any action by Kelly. *See id.* Platts has not pointed to any evidence that Kraft actually supervised his employment, was responsible for deciding whether or not any disability that he had could or should be accommodated, or actively sought denial of his request to return to work—or, indeed, that Kraft was even aware of Platts's disability or need for accommodation of any kind.

Kraft is entitled to summary judgment on Platts's "disability discrimination" claim.

### 4.    *Platt's ICRA Disability Discrimination Claim*

I turn, finally, to Kelly's arguments that it is entitled to summary judgment on Platts's "disability discrimination" claims. As I noted, above, Kelly does not dispute, at least for purposes of summary judgment, that Platts's was "disabled" within the meaning of the ICRA. Rather, its arguments focus on other elements of Platts's claim.

### a.  *Arguments of the parties*

Kelly argues that Platts was not "qualified" for any position at Kraft, with or without reasonable accommodation, because he could not perform the essential function of standing for all such jobs. Kelly contends that Platts's failure to offer any accommodation that would have allowed him to perform the essential function of standing throughout a shift at the Kraft facility is fatal to his claim. Kelly points out that this is the basis on which Platts declined the job he was offered on a "Lunchables line." Kelly also contends that "rotating" among jobs on a line was an essential job function and that Platts's suggestion that he should not be required to rotate through all positions was not reasonable, because it required the employer to displace existing employees. Kelly argues that it made reasonable efforts to accommodate Platts by offering him a job on a "Lunchables line" and that there is no liability simply for failing to engage in an interactive process to determine what other accommodations might be reasonable. Kelly also argues that it did not subject Platts to an adverse employment action, because even though his assignment at Kraft ended, Platts failed to stay in contact with Kelly or to seek other positions with Kelly; Kelly never terminated him. Finally, Kelly asserts that Platts cannot establish that its reasons for not placing him in a position at the Kraft facility were a pretext for disability discrimination. This is so, Kelly argues, because Platts returned to work with a new restriction to "light duty," he declined an assignment to the least strenuous line at the Kraft facility, and the belief of Kelly personnel that he could not fill any job at Kraft, because all required standing, was reasonable. Kelly also points out that it had previously accommodated Platts's physical requirements and that it employed about thirty other disabled workers at the Kraft facility during Platts's period of employment.

In response, Platts argues that he has "direct" evidence of discrimination, in the form of statements by Porterfield and Jones that they did not think that Platts could work

with his "light duty" restrictions, because he could get hurt. He argues that these employees imposed the very prejudices and stereotypical assumptions that the ICRA was designed to eliminate. Even if his claim relies on "indirect" evidence, however, Platts argues that Kelly is not entitled to summary judgment. He argues that his limitation was not an inability to stand at all, but a limitation on his ability to stand in one place for an entire 6-hour shift and that Kelly would have recognized his ability to perform jobs at Kraft, despite his problems with standing, had Kelly engaged in the interactive process in good faith. He also argues that, even if "rotating" was an essential function of all jobs at Kraft, it was an essential function that had been accommodated for him and other employees in the past. He argues that he did suffer adverse employment action, because he was precluded from continuing his prior job with Kraft, and no other jobs available from Kelly were comparable. As to pretext, Platts argues that reasonable jurors could infer pretext, based on evidence that Platts had performed the functions of his job prior to his extended absence, evidence that Kelly failed to explore through an interactive process whether or not he could still do so, and evidence that some disabled employees continued to be accommodated as to the "rotation" requirement.

In reply, Kelly argues that the record shows that Platts was offered the least strenuous job at Kraft, declined it on the basis of the standing requirement, and, consequently, there was no job at Kraft that he could perform. Kelly argues that Platts has no "direct" evidence of disability discrimination, because the perception of its employees that Platts could not work at Kraft were not based on stereotypes, but on information provided by Platts. Kelly reiterates that it cannot be liable, where it offered a reasonable accommodation, but Platts refused that accommodation. Kelly also reiterates that Platts cannot establish pretext, because he did not accept the position that Kelly offered based on the standing requirement, which disqualified him from all jobs at Kraft.

### b.    Analysis

Notwithstanding Kelly's arguments, I find that Platts has met his burden at summary judgment to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson*, 643 F.3d at 1042 (quoting *Matsushita*, 475 U.S. at 586–87)). Although I might not find in Platts's favor on his "disability discrimination" claim on this record, if I were the trier of fact, that is not the standard. *Id.* As to Platts's disability discrimination claim, a reasonable juror could find from conflicting evidence that Kelly failed to investigate the extent of Platts's "standing" limitation; whether that llimitation actually precluded him from any and all jobs at Kraft; and that, consequently, Kelly, not Platts, is responsible for the breakdown of the interactive process to determine what reasonable accommodations Platts might have required. Indeed, reasonable jurors could conclude that Kelly made a hasty decision to "get rid" of an employee who might need such accommodation.

Kelly is correct that "[t]here is no *per se* liability under the ADA [or, presumably, under the ICRA,] if an employer fails to engage in an interactive process." *Kallail v. Alliant Energy Corp. Servs., Inc.*, 691 F.3d 925, 933 (8th Cir. 2012). It is also true, however, that "'the failure of an employer to engage in an interactive process to determine whether reasonable accommodations are possible is *prima facie* evidence that the employer may be acting in bad faith.'" *Id.* (quoting *Fjellestad v. Pizza Hut of Am., Inc.,* 188 F.3d 944, 952 (8th Cir. 1999)). A reasonable juror could find from the evidence presented by Platts (1) that Kelly knew of his disability; (2) that Platts requested accommodations or assistance, both by asking to avoid a position involving standing in one place and by asking to be put back on the "Hamba line," where he had worked successfully before, with only the accommodation of avoiding rotations that put him near machinery with magnets; (3) that Kelly did not in good faith assist Platts in seeking accommodations, but simply dismissed his ability to meet a "standing" requirement

without attempt to explore the extent of Platts's "standing" limitations or how they related to any jobs at Kraft and, indeed, whether he had any "new" restriction at all; and (4) that Platts could have been reasonably accommodated but for Kelly's lack of good faith, where Platts did not believe that he had any "new" restrictions at all and had previously performed jobs at Kraft despite his disability. *See id.* (identifying the elements an employee must show to prove that an employer failed to participate in the interactive process in good faith). Indeed, Porterfield's own testimony shows that she knew that Platts had previously performed jobs at Kraft successfully, with some accommodations, but simply made no inquiry of Platts or his doctor about what Platts's "light duty" limitation actually entailed. Defendants' Appendix at 44 (Porterfield Deposition at 28:4-15). Thus, Porterfield's hastiness in concluding that Platts could not perform any job at Kraft may suggest to reasonable jurors a discriminatory animus to be rid of an employee who continued to need accommodation.

To the extent that Kelly asserts that it cannot be liable, because it offered Platts a position on a "Lunchables line," but he turned it down, that argument is also unavailing. Jury questions are evident, *inter alia*, as to (1) whether or not a position on a "Lunchables line" was a reasonable accommodation, and (2) whether Platts would have understood that such a position might or would fit his limitations, if Kelly had adequately explained the "standing" requirement for that job and had adequately explored with Platts what Platts's actual "standing" limitation was. I also think that there is a jury question— although perhaps just barely—as to whether or not it was reasonable for Platts not to seek assignments to other positions with Kelly, including positions that were not at Kraft, in light of Porterfield's response to his inquiries about returning to work at Kraft. *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 616-17 & n.2 (8th Cir. 2007) (explaining the requirements to prove constructive discharge, noting that its analysis applied to both Title VII and ICRA claims).

Kelly is not entitled to summary judgment on Platts's "disability discrimination" claim.

## III.   CONCLUSION

Upon the foregoing,

1.      The defendants' May 6, 2015, Motion To Strike Plaintiff's Entry On Errata Sheet Dated March 25, 2015 (docket no. 28) is **denied**;

2.      The defendants' April 6, 2015, Motion For Summary Judgment (docket no. 26) is **granted in part and denied in part**, as follows:

      a.      The Motion is **granted** as to Platts's common-law "public policy" wrongful discrimination claim, because that claim is "preempted" by the ICRA;

      b.      The Motion is **granted** as to Platts's "disability discrimination" claim, pursuant to the ICRA, against defendant Kraft Foods Group, Inc.; but

      c.      The Motion is **denied** as to Platts's "disability discrimination" claim, pursuant to the ICRA, against defendant Kelly Services, Inc.

THUS, this case will proceed to jury trial only on Platts's "disability discrimination" claim, pursuant to the ICRA, and only against defendant Kelly Services, Inc.

**IT IS SO ORDERED**.

**DATED** this 26th day of May, 2015.

_Mark W. Bennett_
_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA